**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**KRYSTLE PERRY and ANTHONY PERRY,
individually and on behalf of
their minor child K.P.,**

      **Plaintiffs,**

**v.**                                                    **Civil Action No. 2:24-CV-18**

**STACY MARTENEY et al,**

      **Defendants.**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS [ECF NO. 29], GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION [ECF NO. 7] AND DENYING DEFENDANT'S
MOTION TO STAY [ECF NO. 22]**

Pending before the Court are Defendants Stacy Marteney, Christine Miller, and the Upshur County Board of Education's Motion to Dismiss [ECF No. 29], Plaintiffs' Motion for Preliminary Injunction and Expedited Consideration [ECF No. 7] as well as Defendant Matthew Christiansen's Motion to Stay [ECF No. 22]. The motions are fully briefed and, after oral argument on August 12, 2024 at the Clarksburg point of holding court, are ripe for decision. For the reasons and to the extent set forth herein, Plaintiffs' Motion for Preliminary Injunction [ECF No. 7] is **GRANTED**, Defendants' Motion to Dismiss [ECF No. 29] is **GRANTED IN PART** and **DENIED IN PART** and Defendant's Motion to Stay [ECF No. 22] is **DENIED**.

**Perry et al. v. Marteney et al.**                          **2:24-CV-18**

Preliminary Injunction Order

### I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs, Krystle and Anthony Perry, individually and on behalf of their minor child, K.P., filed their Complaint on July 5, 2024.  ECF No. 1.  Therein, they claim their respective First Amendment rights have been infringed by West Virginia's mandatory vaccination law, W. Va. Code § 16-3-4.  Specifically, they claim the mandatory vaccinations provided for under state law run counter to their sincerely held religious beliefs and, with Defendants' refusal to enroll K.P. in virtual school, they seek relief under 42 U.S.C. § 1983 including injunctive relief and attorneys' fees. In their pending motion, Plaintiffs request the Court enjoin Defendants from enforcing the challenged statute against K.P. as it pertains to her efforts to enroll in virtual schooling for the 2024-2025 academic year.

Defendants argue against any injunction and, via separate motion, urge the Court to stay this matter under the Pullman abstention doctrine.  In addition, the Upshur County Defendants urge the Court to dismiss Plaintiffs' Complaint for multiple reasons including Eleventh Amendment immunity and failure to join indispensable parties.

## II.   FINDINGS OF FACTS

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court makes the following findings of fact in support of the injunction entered with this Order.[1]

Plaintiffs filed the instant civil action, individually and on behalf of their minor child, K.P., against the School Board Parties — the Upshur County Board of Education, Superintendent Christine Miller, and Virtual School Coordinator Stacey Marteney; Dr. Matthew Christiansen, as the State Health Officer and Commissioner of the Bureau of Public Health; and Mr. Doug Cipoletti,[2] as Executive Director of the West Virginia Virtual Academy, on July 5, 2024. See generally Compl., ECF No. 1.

From August 2022 through January 2024, K.P., Plaintiffs' minor daughter, was enrolled in an online learning program but was not physically present in a classroom with other children. Id. ¶¶ 2 and 70. K.P. was enrolled in Upshur County Virtual School for approximately 16 months. Id. ¶ 75.[3]

---

[1] The Court offered each party the opportunity to call witnesses and present any other evidence they believed the Court should consider at the August 12, 2024 hearing. The parties declined the invitation noting the written record was sufficient.

[2] Mr. Cipoletti has been replaced by Bryan Hoylman as a Defendant. ECF No. 20.

[3] The Complaint alleges K.P. was enrolled in the West Virginia Virtual Academy; however, she was actually enrolled as a student with the Upshur County Virtual School – a separate program offered exclusively through Upshur County. The parties agreed at the April 12, 2024, hearing this was the case.

Perry et al. v. Marteney et al.                    2:24-CV-18

Preliminary Injunction Order

Regarding the mandatory immunization of school children, West Virginia Code § 16-3-4 prohibits K.P. from attending school in West Virginia unless she receives all the vaccines required under the statute absent medical exemption. Id. ¶ 1. In West Virginia, it is unlawful for any child to attend "any of the schools of the state or a state-regulated childcare center until he or she has been immunized against chickenpox, hepatitis-b, measles, meningitis, mumps, diphtheria, polio, rubella, tetanus and whooping cough" and "[n]o person shall be allowed to enter school without at least one dose of each required vaccine." Id. ¶ 18; see also W. Va. Code § 16-3-4. Similarly, no child may be "admitted or received in any of the schools of the state" unless they have received the required vaccinations. ECF No. 1 at ¶ 99; see also W. Va. Code § 16-3-4. K.P. has not received all the vaccines listed in the statute. ECF No. 1 at ¶ 6. Plaintiffs allege that they possess deeply held religious beliefs that forbid them from fully vaccinating K.P., as required under W. Va. Code § 16-3-4. Id. ¶ 11.[4]

On December 18, 2023, the Superintendent of the West Virginia Department of Education sent the Superintendent's Update email, which included a directive to county school systems across the

_____

[4] No dispute has been raised as to this allegation and the Court accepts it as true for purposes of this motion.

state, informing them that all full-time virtual students were "required to be fully immunized according to W. Va. Code § 16-3-4 exactly as they would be when enrolling for in-person instruction" and that the school boards were to "review the enrollment records of [their] full-time virtual students and . . . correct any non-compliance enrollment occurrences."

On June 14, 2023, the West Virginia State Board of Education authorized an immediate intervention of the Upshur County School system.  As a result of the Special Circumstance Review, it was the recommendation of the West Virginia Department of Education that extraordinary circumstances existed in the county that constituted major impediments to the provision of education programs and services for students, and that the Upshur County school system be issued Non-approval status.  It was further recommended that since these extraordinary circumstances had been documented and existed, delaying the intervention by the State Board into Upshur County Schools for any period of time would not have been in the best interest of the students and staff in Upshur County in accordance with W. Va. Code § 18-2E-5.  The State Board made findings related to preliminary investigations and broadly delegated the county's statutory authority to the State Board. See also W. Va. Code § 18-2E-5.  Among the State Board's findings was that "the authority of the Upshur County Board of Education

shall be limited in areas that compromise the delivery of a thorough and efficient education to its students as designated by the WVBE . . .". In addition, the State Board appointed Stephen L. Wotring as interim Superintendent and granted the Deputy State Superintendent the authority to hire a county superintendent to replace the interim. The State Board "limited the authority of the Upshur County Board of Education as to finances, personnel, federal programs and any other areas designated by the WVBE. . ." On June 14, 2023, the State Board commenced its immediate intervention. In January 2024, following the State Board's takeover, K.P. withdrew from Upshur County Virtual School because she elected not to receive the required vaccinations due to religious beliefs.

Plaintiffs' eight-year-old child, K.P., was enrolled in the Upshur County Virtual School for 17 months, from August of 2022 to January of 2024. ECF No. 1 at ¶ 134. Defendant Miller is the duly empaneled Superintendent of the Upshur County School system and directs Defendant Marteney's actions, including enrollment and dis-enrollment of students in the virtual school. Id. ¶ 94. In December 2023, Defendant Marteney, the Virtual Learning Coordinator for the Upshur School District, informed Plaintiffs that K.P. would not be enrolled in the Upshur County Virtual School if she did not receive all vaccines required under W. Va. Code §

16-3-4.  Id. ¶ 75.  Plaintiffs thereafter requested a religious exemption for K.P. so she could continue her education in the virtual school without receiving any additional vaccine doses. Defendants rejected that request.  Id. ¶ 183; see also ECF No. 1-7 (denial of Plaintiffs' religious exemption request).

In their verified Complaint, Plaintiffs allege, and submit competent evidence via their verifications, Defendant Marteney is "tasked with implementing and enforcing, and does implement and enforce, the mandatory vaccination requirements of W. Va. Code § 16-3-4 against school-aged children desiring to attend the Virtual Academy, and she enforced the [statute] against the Plaintiffs and excluded K.P. from the Virtual Academy" after Plaintiffs requested a religious exemption.  ECF No. 1 ¶ 92.  Defendant Miller is also tasked, under W. Va. Code § 18-4-10, with implementing and enforcing all procedures of state law, including enforcing W. Va. Code § 16-3-4 against K.P., which necessarily extended to oversight of the denial of her religious exemption request and exclusion from the virtual school.  Id. ¶ 94.

West Virginia Governor Jim Justice vetoed a bill passed by the West Virginia Legislature during the 2024 regular session that would have allowed for exemptions from vaccination requirements for students enrolled only in virtual public schools. Id. ¶ 143. Currently, the only exemption to the compulsory immunization of

school children is a medical exemption.  Id. ¶¶ 144 and 170; see also W. Va. Code § 16-3-4.

In their Complaint, Plaintiffs seek a declaration by this Court related to the constitutionality of W. Va. Code § 16-3-4, specifically the lack of religious exemption thereto.  Id. Plaintiffs allege violations of their First Amendment Free Exercise Rights.  Id. at Count I.  Additionally, Plaintiffs seek to enjoin the Upshur County Board from implementing and enforcing W. Va. Code § 16-3-4 as it relates to K.P.  Id.

Given the issues presented in the myriad of motions pending, a review of certain West Virginia statutes as it pertains to the parties and their duties under law is necessary.

As a statutory corporation, a West Virginia county school board only has those powers expressly granted by state law or which arise by necessary implication from expressly granted powers.  See, e.g., Shinn v. Bd. of Educ., 20 S.E. 604 (W. Va. 1894) ("The board of education of a school district is a corporation created by statute with functions of a public nature expressly given and no other; and it can exercise no power not expressly conferred or fairly arising from necessary implication, and in no other mode than that prescribed or authorized by statute."); Honaker v. Bd. of Educ., 24 S.E. 544 (W. Va. 1896).  Regarding boards of education, the Supreme Court of Appeals of West Virginia has

observed "the rule of law applies of strict construction and a consequent limitation of the rights which may be exercised by them and the duties which they can legally perform." Herald v. Bd. of Educ., 65 S.E. 102 (W. Va. 1909).

Historically and currently, a board of education is a "creature of statute" with no powers other than those expressly given to it or that arise by necessary implication. See, e.g., State v. Rouzer, 32 S.E.2d 865 (W. Va. 1945); Dooley v. Board of Education, 93 S.E. 766 (W. Va. 1917). Thus, the Board may only act in the mode prescribed or authorized by statute. Id. In addition, the Board is a political subdivision of the State of West Virginia, maintains a corporate character, and is charged with the control and management of the schools and the district pursuant to West Virginia Code §§ 18-5-1, 18-5-5, and 18-5-13.

A county superintendent of schools has statutory duties enumerated by the West Virginia Legislature. Specifically, a county superintendent shall:

> (1) Act as the chief executive officer of the county board as may be delineated in his or her contract or other written agreement with the county board, and, under the direction of the state board, execute all its education policies;

*****

Preliminary Injunction Order

        (10) Exercise all other authority granted by
this chapter or required by the county board
or state board; []

W. Va. Code § 18-4-10.

    With respect to compulsory immunization of school children,

West Virginia Code § 16-3-4 provides:

        (a) Whenever a resident birth occurs, the
commissioner shall promptly provide parents of
the newborn child with information on
immunizations mandated by this state or
required for admission to a public, private
and parochial school in this state or a state-
regulated child care center.

        (b) Except as hereinafter provided, a child
entering school or a state- regulated child
care center in this state must be immunized
against chickenpox, hepatitis-b, measles,
meningitis, mumps, diphtheria, polio,
rubella, tetanus and whooping cough.

        (c) No child or person may be admitted or
received in any of the schools of the state or
a state-regulated child care center until he
or she has been immunized against chickenpox,
hepatitis-b, measles, meningitis, mumps,
diphtheria, polio,, rubella, tetanus and
whooping cough or produces a certificate from
the commissioner granting the child or person
an exemption from the compulsory immunization
requirements of this section.

        (d) Any school or state-regulated child care
center personnel having information
concerning any person who attempts to be
enrolled in a school or state-regulated child
care center without having been immunized
against chickenpox, hepatitis-b, measles,
meningitis, mumps, diphtheria, polio,
rubella, tetanus and whooping cough shall
report the names of all such persons to the
commissioner.

Preliminary Injunction Order

<hr>

(e) Persons may be provisionally enrolled under minimum criteria established by the commissioner so that the person's immunization may be completed while missing a minimum amount of school. No person shall be allowed to enter school without at least one dose of each required vaccine.

(f) County health departments shall furnish the biologicals for this immunization for children of parents or guardians who attest that they cannot afford or otherwise access vaccines elsewhere.

(g) Health officers and physicians who provide vaccinations must present the person vaccinated with a certificate free of charge showing that they have been immunized against chickenpox, hepatitis-b, measles, meningitis, mumps, diphtheria, polio, rubella, tetanus and whooping cough, or he or she may give the certificate to any person or child whom he or she knows to have been immunized against chickenpox, hepatitis-b, measles, meningitis, mumps, diphtheria, polio, rubella, tetanus and whooping cough.

(h) The commissioner is authorized to grant, renew, condition, deny, suspend or revoke exemptions to the compulsory immunization requirements of this section, on a statewide basis, upon sufficient medical evidence that immunization is contraindicated or there exists a specific precaution to a particular vaccine.

(1) A request for an exemption to the compulsory immunization requirements of this section must be accompanied by the certification of a licensed physician stating that the physical condition of the child is such that immunization is contraindicated or there exists a specific precaution to a particular vaccine.

(2) The commissioner is authorized to appoint and employ an Immunization Officer to make determinations on request for an exemption to the compulsory immunization requirements of this section, on a statewide basis, and delegate to the Immunization Officer the authority granted to the commissioner by this subsection.

(3) A person appointed and employed as the Immunization Officer must be a physician licensed under the laws of this state to practice medicine.

(4) The Immunization Officer's decision on a request for an exemption to the compulsory immunization requirements of this section may be appealed to the State Health Officer.

(5) The final determination of the State Health Officer is subject to a right of appeal pursuant to the provisions of article five, chapter twenty-nine a of this code.

(i) A physician who provides any person with a false certificate of immunization against chickenpox, hepatitis-b, measles, meningitis, mumps, diphtheria, polio,, rubella, tetanus and whooping cough is guilty of a misdemeanor and, upon conviction, shall be fined not less than $25 nor more than $100.

W. Va. Code § 16-3-4.

Effective September 14, 2015, the State Board of Education promulgated a legislative rule related to "Health Promotion and Disease Prevention," known as Policy 2423. 126 W. Va. C.S.R. § 51. Specifically, this legislative rule includes provisions related to statewide immunization tracking, state-declared health promotion through up-to-date immunizations, disease prevention measures

Preliminary Injunction Order

through immunizations, and required vaccinations for students.
See 126 W. Va. C.S.R. 51 at §§ 4.23, 5.1, 6.1, 6.2, 6.3, 6.4, 7.1.

### III.  ANALYSIS

### A. Subject Matter Jurisdiction and Ex Parte Young

In Count I of the Complaint, Plaintiffs allege the Upshur
County Defendants (the Upshur County Board of Education, Defendant
Marteney, and Defendant Miller) and Defendant Christiansen have
and continue to violate their respective First Amendment rights
and seek redress, specifically injunctive relief and attorneys'
fees pursuant to 42 U.S.C. § 1988, under 42 U.S.C. § 1983.  ECF
No. 1.  That claim vests this Court with jurisdiction per 28 U.S.C.
§ 1331—federal question jurisdiction.[5]

Defendants argue, however, the Eleventh Amendment prohibits
Plaintiffs from pursuing their claims in this Court.  Plaintiffs

---

[5] During the August 12, 2024 oral argument, the parties alluded to
the limitations on federal court jurisdiction under Article III of
the United States Constitution.  Of course, "[f]ederal courts are
not courts of general jurisdiction; they have only the power that
is authorized by Article III of the Constitution and the statutes
enacted by Congress pursuant thereto."  Bender v. Williamsport
Area Sch. Dist., 475 U.S. 534, 541 (1986).  The parties cannot
conjure subject-matter jurisdiction, nor can a defect in subject-
matter jurisdiction be waived.  See United States v. Cotton, 535
U.S. 625, 630 (2002).  Thus, questions of subject-matter
jurisdiction may be raised at any point during the proceedings and
may (or, more precisely, must) be raised sua sponte by the court.
See Bender, 475 U.S. at 541 ("[E]very federal appellate court has
a special obligation to satisfy itself not only of its own
jurisdiction, but also that of the lower courts in a cause under
review, even though the parties are prepared to concede it.")
(internal quotation marks omitted).

contend the relief sought does not run afoul of constitutional immunity.   The Court, being mindful of the Fourth Circuit's direction in Sonda v. West Virginia Oil and Gas Conservation Comm'n, 92 F.4th 213 (4th Cir. 2024),[6] considers the issue of jurisdiction first.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. amend. XI.   The Supreme Court of the United States has interpreted this Amendment to mean that a state may not "be sued as defendant in any court in this country without [its] consent . . . ." Hans v. Louisiana, 134 U.S. 1, 17 (1890) (quoting Cunningham v. R.R. Co., 109 U.S. 446, 451 (1883)); see also Doyle v. Hogan, 1 F.4th 249, 254 (4th Cir. 2021) (citing Va. Off. For Protection & Advocacy v. Stewart, 563 U.S. 247 (2011) ("In general, States may not be haled into federal court without their consent.")). The question of Eleventh Amendment immunity is a jurisdictional

---

[6] As discussed infra, Defendants urge the Court to exercise its discretion and decline Plaintiffs' invitation to adjudicate their First Amendment claims or, at least, stay this case invoking Pullman abstention.   Sonda is much discussed in the briefs and herein on that issue.   However, the Fourth Circuit made clear in Sonda that subject matter jurisdiction must be considered initially.   See id. at 219-220.

**Perry et al. v. Marteney et al.**                    **2:24-CV-18**

---

### Preliminary Injunction Order

---

one.  See Suarez Corp. Industries v. McGraw, 202 F.3d 676, 683 n.12 (4th Cir. 2000) (citation omitted).

### 1. Dr. Christiansen as A State Entity

The threshold (but not necessarily dispositive) issue is whether any of the defendants are considered "the state" under the Eleventh Amendment. The Court addresses each Defendant in turn starting with the more obvious question of Defendant Dr. Christiansen.  He serves as State Health Officer and Commissioner for the West Virginia Department of Health and Human Resources. ECF No. 1 at ¶ 95.  Under the challenged statute, W. Va. Code § 16-3-4, Dr. Christiansen is charged with implementing the mandatory vaccination requirements for school-aged children, while also granting medical exemptions for the same.  Id.[7]  He is only named as a defendant in his official capacity.  Id.  An "official capacity suit" is merely another way to assert a claim against the state itself.  See Panico v. City of Westover, Civil Action No. 21-CV-96, 2022 WL 989120, at *6 (N.D.W. Va. March 31, 2022) (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)).  Thus, Dr. Christiansen is considered a state official for Eleventh Amendment purposes.

---

[7] Plaintiffs allege Defendant Christiansen is charged with "enforcing" W. Va. Code § 16-3-4.  For the reasons discussed herein, the Court disagrees with that interpretation of his duties under that statute.

Perry et al. v. Marteney et al.                         2:24-CV-18

Preliminary Injunction Order

### 2. Upshur County Defendants as State Entities

The Upshur County Defendants present a more complicated assessment. Typically, "counties [and therefore their employees] are not arms of the state and thus do not fall within the ambit of the Eleventh Amendment." Workman v. Mingo County Schools, 667 F. Supp. 2d 679, 685 (S.D.W. Va. 2009). However, as discussed above, the State Board of Education has assumed control of the Upshur County Board of Education. It has also, under its statutory authority, appointed the individual defendants, Virtual Learning Coordinator Stacy Marteney and Superintendent Christine Miller, to their positions. The parties have thoroughly addressed the complicating factor the State takeover presents here. At the August 12, 2024 oral argument, Plaintiffs offered to dismiss the Upshur County Board of Education as a defendant noting it an unnecessary party to secure the injunctive relief sought here and to avoid any Eleventh Amendment immunity entanglements. No party did or has objected. The Court, having no objection of its own, hereby **DISMISSES** the Upshur County Board of Education as a party-defendant at Plaintiffs' request.

Two inquiries can bring a local government body within the protection of Eleventh Amendment immunity. First, "if the State treasury will be called upon to pay a judgment against a governmental entity, then Eleventh Amendment immunity applies to

16

that entity." Cash v. Granville Cty Bd. of Educ., 242 F.3d 219, 223 (4th Cir. 2001). Because Plaintiffs in this matter seek only declaratory and prospective injunctive relief, the first factor does not apply.

The second inquiry, often referred to as the "sovereign dignity" inquiry, considers whether the government entity and the State are "sufficiently close to make the entity an arm of the State." Id. at 224. In determining whether a government entity is an "arm of the state," the Court must consider:

> (1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys;
>
> (2) the scope of the entity's concerns— whether local or statewide—with which the entity is involved; and
>
> (3) the manner in which State law treats the entity.

Id. In Cash, the Fourth Circuit concluded that because, under North Carolina law, the local school board had nearly full autonomy to act, including the power to hire and fire administrators, because its concerns were generally local, and because the State treats local school boards as local entities, the local school board in Cash was not an arm of the State.

This Court has the benefit of Judge Goodwin's analysis in Workman. There, Judge Goodwin applied the sovereign dignity test

to the entity defendant Mingo County Board of Education, concluding
that it was an arm of the State entitled to sovereign immunity.
Workman, 667 F. Supp.2d at 687.  The court reached this conclusion
primarily because the Mingo Board had been taken over by the State
Board of Education under W. Va. Code § 18-2E-5(p)(4)(C). Under
that provision, the court reasoned that because the Mingo Board
"ha[d] little to no rights of autonomy and self-control," and
because the State Board was effectively "empowered to manage the
schools in Mingo County and accordingly control the Mingo Board,"
the Mingo Board—after takeover—was an arm of the State entitled to
state sovereign immunity. As a result, the court concluded that
all claims against the Mingo Board were barred in federal court
and dismissed it as a defendant.

Here, the State Board of Education has used the same statute
to take over the Upshur County Board of Education. See ECF No. 40-
2. Through its takeover order, the State Board has removed the
county superintendent and all employees who served at the pleasure
of the county superintendent. Id. at ¶ 6; 9. The State Board
further limited the Upshur Board's authority "in areas that
comprise the delivery of a thorough and efficient education to its
students as designated by the WVBE by rule," including delegating
decision-making authority to the Deputy State Superintendent. Id.
at ¶ 5.  Although the provisions of the takeover law are now

somewhat different, the level of control possessed by the State Board remains the same. Accordingly, the Upshur Board is, in the circumstances presented, an arm of the state entitled to state sovereign immunity. That entity has already been voluntarily dismissed. See supra.

However, the County Superintendent and Virtual Learning Coordinator remain parties in their official capacities. ECF No. 1. ¶¶ 92 and 94. The County Superintendent, Defendant Miller, was hired by the Deputy State Superintendent, see ECF No. 40-2 at ¶ 7-8, and operates under the authority of the State Board of Education via the takeover order. Moreover, because the Deputy State Superintendent was empowered to fill all administrative positions in the Upshur County Schools, see ECF No. 40-2 at ¶ 10, both the County Superintendent and the Upshur County Virtual Learning Coordinator would be considered "state officials" for Eleventh Amendment purposes. See Workman, 667 F. Supp. 2d at 688. "Even though the language of the Eleventh Amendment preserves sovereign immunity of only the **States** of the Union, it is settled that this protection extends also to 'state agents and state instrumentalities,' or stated otherwise, to 'arms of the State' and State officials." Cash, 242 F.3d at 222 (emphasis in the original) (cleaned up).

Perry et al. v. Marteney et al.                          2:24-CV-18

### 3. Ex parte Young

Plaintiffs contend quite correctly this does not end the inquiry, however.  In Ex parte Young, the Supreme Court observed that "a suit against individuals, for the purpose of preventing them, as officers of a state, from **enforcing** an unconstitutional enactment, to the injury of the rights of the plaintiff, is not a suit against the state within the meaning of the [Eleventh] Amendment." 209 U.S. 123, 154 (1908) (emphasis added) (citation omitted).

> If the act which [a state officer] seeks to enforce [is] a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

Id. at 159-60.  Accordingly, "federal courts may exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." Republic of Paraguay v. Allen, 134 F.3d 622, 627 (4th Cir. 1998).

Nevertheless, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act[.]" Ex parte Young, 209 U.S. at 157; see also Doyle, 1 F.4th at 254. Otherwise, a plaintiff "is merely making him a party as a representative of the State, and thereby attempting to make the State a party." Id. The Fourth Circuit has further explained that "Ex parte Young requires a 'special relation' between the state officer and the challenged statute to avoid the Eleventh Amendment's bar." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001); Doyle, 1 F.4th at 254. Moreover, a general authority to enforce the laws of a state is not a close enough relation. Id. "Instead, the officer sued must be able to enforce, if he [or she] so chooses, the specific law the plaintiff challenges." Doyle, 1 F.4th at 255. Overall, "[t]he exception is narrow: it applies only to prospective relief, [and] it does not permit judgments against state officers declaring that they violated federal law in the past. . .." P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

**a. Dr. Christiansen Remains Immune**

The Court first examines Ex parte Young with respect to Dr. Christiansen, named only in his official capacity as State Health

Perry et al. v. Marteney et al.                        2:24-CV-18

Preliminary Injunction Order
_____

Officer and Commissioner of the Bureau of Public Health.  ECF No.

1.  The relief sought is largely limited to prospective enforcement

of the West Virginia mandatory vaccine law, W. Va. Code § 16-3-4,

as it pertains to Plaintiffs.  Dr. Christiansen's legal authority

under the challenged statute is limited to (1) providing parents

of newborn children with information on mandated vaccinations, W.

Va. Code § 16-3-4(a); (2) providing medical exemptions, W.Va. Code

§ 16-3-4(c), (h); (3) developing a minimal criteria for the

provisional enrollment of a student who has "at least one dose of

each required vaccine," "so that the [student's] immunization may

be completed while missing a minimum amount of school," W. Va.

Code § 16-3-4(e); and (4) appointing and employing an Immunization

Officer, W. Va. Code § 16-3-4(h)(2).  As Plaintiffs vociferously

protest, West Virginia law does not provide Dr. Christiansen or

anyone else authority to grant any other exemptions including

exemption for religious objections.

     Dr. Christiansen is irrelevant to fashioning the remedy

requested in the Complaint.  Dr. Christiansen cannot force Upshur

County officials – even while that county's schools are under State

control - to re-enroll the Plaintiff. The State Health Officer

does not have the authority to mandate that any student be

enrolled, or unenrolled in a school. In short, the State Health

Officer has no control over the State Superintendent, the County

Perry et al. v. Marteney et al.                    2:24-CV-18

Preliminary Injunction Order

Board of Education, or any individual school. See W. Va. Code §§
16-1-5 (designating that the State Health Officer may also serve
as the Commissioner of the Bureau for Public Health); 16-1-6
(enumerating powers of the Commissioner of the Bureau for Public
Health). In short, Dr. Christiansen lacks the legal ability to
remedy the alleged constitutional violation as Plaintiffs
expressly seek in their Prayer for Relief. See ECF No. 1, at ¶¶
283-84. No "special relation" or even "some connection" exists
between Defendant Christiansen and the relief sought here. See
Doyle, 1 F.4th at 254. Accordingly, this Court lacks jurisdiction
over Dr. Christiansen as he remains vested with immunity from suit
in this Court under the Eleventh Amendment and must be dismissed.[8]

---

[8] Dr. Christiansen also argues Plaintiffs lack standing to seek
even injunctive relief against him in his official capacity.
Although not raised via Rule 12(b)(1) motion, "federal courts are
under an independent obligation to examine their own jurisdiction,
and standing is perhaps the most important of [the jurisdictional]
doctrines." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231
(1990) (internal quotations and citations omitted), holding
modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.,
541 U.S. 774 (2004). For the same reasons the Court finds Dr.
Christiansen is cloaked in Eleventh Amendment immunity here, the
Court concludes Plaintiffs have not established either the
requisite "causal connection" between their claimed injury and Dr.
Christiansen's conduct or that Dr. Christiansen could, even under
this Court's command, redress that injury. See Friends for Ferrell
Parkway, LLC v. Stasko, 282 F.3d 315 (4th Cir. 2002). Plaintiffs'
lack of standing with respect to their claims against Dr.
Christiansen requires his dismissal on this separate, independent
basis.

### b. Upshur County Individual Defendants Are Not Immune

With respect to Defendants Marteney and Miller, the Court ultimately reaches a different decision, however.  Again, although the Eleventh Amendment technically bars a party from suing a state or its agency to seek injunctive relief,[9] a plaintiff may bring the suit against a state officer in his or her official capacity seeking prospective injunctive relief, thereby effecting the same result.  Seminole Tribe v. Florida, 517 U.S. 44, 71 n.14 (1996) ("An individual can bring suit against a state officer in order to ensure that the officer's conduct is in compliance with federal law.").  It remains a narrow exception to constitutional sovereign immunity.  "Young's applicability has been tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States."  Papasan v. Allain, 478 U.S. 265, 277 (1986); Griffin v. Cnty. School Bd. of Prince Edward Cnty., 377 U.S. 218, 228 (1964) (noting "suits against state and county officials" to enjoin unconstitutional action are permitted under Ex parte Young).  In such cases, citizens can bring suits against a state officer, in his official capacity, where he has a "special

---

[9] See Cory v. White, 457 U.S. 85, 91 (1982) ("Thus, the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction.").

**Perry et al. v. Marteney et al.**                                    **2:24-CV-18**

<u>Preliminary Injunction Order</u>

relation" to the challenged act.   <u>Id</u>. at 157; <u>see also</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 346-49 (1979); <u>Edelman v. Jordan</u>, 415 U.S. 651, 665-69 (1974).

To meet the "special relation" requirement, the challenged official must have "proximity to and responsibility for the challenged state action," thus ensuring "that a federal injunction will be effective with respect to the underlying claim." <u>South Carolina Wildlife Federation v. Limehouse</u>, 549 F.3d 324, 332-33 (4th Cir. 2008). This test does not require the challenged statute specify the official's role, but where there are express obligations, the officer's duty is made clearer. <u>See</u> <u>Ex parte Young</u>, 209 U.S. at 157. Ultimately, the "important and material fact" is that "the state officer, by virtue of his office, has some connection with the enforcement of the act." <u>Id</u>.

Defendant Miller ("Superintendent Miller") is the duly appointed Superintendent of the Upshur County School System and has been sued only in her official capacity as Superintendent. Her duties are outlined in W. Va. Code § 18-4-10 and include enforcement of all policies and procedures by state law, including, as is relevant here, enforcement of W. Va. Code § 16-3-4 against Plaintiffs. Again, Superintendent Miller was appointed by the State Department of Education, and is subject, at present, to their oversight rather than that of the local board. <u>See</u> ECF 40-2.

Among other things, statutory authority renders Superintendent Miller the "chief executive officer" of the board and empowers her to "under the direction of the state board, execute all its education policies." W. Va. Code § 18-4-10(1) and (10).

Defendant Marteney works as the Virtual Learning Coordinator for Upshur School Schools, the system through which Plaintiffs enrolled, and attempted to re-enroll, K.P. into the Upshur County Virtual School. ECF No. ¶ 92. Marteney is sued solely in her official capacity. Id. Ms. Marteney is tasked with implementing and enforcing, and does implement and enforce, the mandatory vaccination requirements of W. Va. Code § 16-3-4 and cited this statute when refusing to re-enroll K.P. in the county's virtual school. Id. Plaintiffs allege Marteney was primarily responsible for the decision made subject of the Complaint. Id. ¶¶ 75-79.

In fact, the challenged statute, specifically W. Va. Code §16-3-4(c) and (d) charges the schools and school boards to enforce the mandatory vaccine requirement. Those sections provide:

> (c) No child or person may be **admitted** or received **in any of the schools of the state** or a state-regulated child care center until he or she has been immunized against chickenpox, hepatitis-b, measles, meningitis, mumps, diphtheria, polio,, rubella, tetanus and whooping cough or produces a certificate from the commissioner granting the child or person an exemption from the compulsory immunization requirements of this section.

**Perry et al. v. Marteney et al.**                                              **2:24-CV-18**

> (d) Any **school** or state-regulated child care
> center personnel having information
> concerning any person who attempts to be
> **enrolled in a school** or state-regulated child
> care center without having been immunized
> against chickenpox, hepatitis-b, measles,
> meningitis, mumps, diphtheria, polio,
> rubella, tetanus and whooping cough shall
> report the names of all such persons to the
> commissioner.

Id. (emphasis added).

This Court once again finds Judge Goodwin's analysis in

Workman compelling on this particular issue.  There, the plaintiffs

asserted claims against the Mingo County Board of Education, which

had likewise been taken over by the State Board of Education, and

others challenging the constitutionality of W. Va. Code § 16-3-4.

See Workman, 667 F. Supp.2d at 681-684.  Judge Goodwin found the

official capacity claims against the individual defendants

including the State Superintendent of Schools and the

Superintendent of Mingo County Schools survived Eleventh Amendment

immunity challenges under Ex parte Young such that he "must address

the merits of [plaintiff's] claims."  Id. at 688.  In doing so, he

highlighted the fact that the county superintendent (post-state

take over) "was hired by a state officer, to enact state policy."

Id.  "Local officers, depending on the particular circumstances,

may be entitled to Eleventh Amendment protection as agents of the state." Id. (citation omitted).[10]

The same result is appropriate here.[11]  Both Defendants Marteney and Miller were installed after the State Board of Education assumed control of the Upshur County Board of Education and its operations.  In their respective roles of Virtual Learning Coordinator and County Superintendent, they have the authority to admit and enroll students, or not to do so, in accordance with state law including W. Va. Code § 16-3-4.  The Court, at this preliminary injunction stage, concludes both Defendants Marteney and Miller have the requisite degree of "some connection" to the West Virginia mandatory vaccine statute.  Thus, considering the prospective injunctive relief sought, this Court has jurisdiction

---

[10] In affirming Judge Goodwin's grant of summary judgment to defendants, the Fourth Circuit did not substantively address plaintiffs' assignment of error on subject matter jurisdiction including the Eleventh Amendment.  See Workman v. Mingo County Board of Education, 419 Fed. Appx. 348 (4th Cir. 2011).

[11] The Upshur County Defendants inexplicably urge this Court to follow Judge Goodwin's lead in Workman and find the individual defendants "agents of the state" for Eleventh Amendment purposes but to plot a different path on application of Ex parte Young. ECF No. 45 at 17.  They argue Defendants Marteney and Miller were only hired to "enact state policy" which ostensibly includes W. Va. Code § 16-3-4.  The Court rejects the inconsistent argument instead concluding those assigned duties establish "some connection" to the challenged statute triggering Ex parte Young.

over Plaintiffs' claims against those specific Defendants pursuant to Ex parte Young.[12]

### B. **Pullman** Abstention

Defendant Dr. Christiansen first raised the issue of abstention in his Motion to Stay. He has now been dismissed which arguably renders that relief moot. However, the Upshur County Defendants argued in support of abstention or, alternatively, a stay. The Court therefore considers whether either is appropriate here. First, the Court must – and does – determine it has jurisdiction over this matter. See Sonda, 92 F.3d at 219 (noting a court's "independent obligation to satisfy itself of its jurisdiction."). Plaintiffs' claims arise under federal law, i.e., 42 U.S.C. § 1983, vesting original jurisdiction here. See 18 U.S.C. § 1331. Defendants make no argument or suggestion to the contrary.[13]

"The generally applicable rule is that a federal court, whose jurisdiction has been invoked, must exercise that jurisdiction and

---

[12] The Upshur County Defendants do argue that some "state treasure" may be implicated calling into question Ex parte Young's application. The Court finds that argument unavailing upon review of Plaintiffs' Complaint. The only monetary recovery sought is for attorney's fees under 42 U.S.C. § 1988. Such relief does not vitiate jurisdiction here. See Hutto v. Finney, 437 U.S. 678 (1978); Missouri v. Jenkins, 491 U.S. 274 (1989); Kentucky v. Graham, 473 U.S. 159 (1985).

[13] The Court rejects the remaining Defendants Eleventh Amendment immunity argument. See supra.

address the matter before it." <u>Sonda</u>, 92 F.3d at 219.  Both the Supreme Court and the Fourth Circuit have repeatedly instructed district courts this is their "strict duty." <u>Martin v. Stewart</u>, 499 F.3d 360, 363 (4th Cir. 2007) (quoting <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996)).  Indeed, the Supreme Court has emphasized that this duty is a "virtually unflagging obligation." <u>Deakins v. Monaghan</u>, 484 U.S. 193, 203 (1988) (quoting <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976)).  Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." <u>Cohens v. Virginia</u>, 19 U.S. 264, 404 (1821) (Marshall, C.J.).

However, "an extraordinary and narrow exception" to this duty exists when abstention is justified by the relevant circumstances, as for example, under the abstention doctrine articulated in <u>Pullman</u>.  <u>See</u> <u>Quackenbush</u>, 517 U.S. at 728 (cleaned up). Defendants ask the Court to abstain from deciding the issues presented or stay this matter pending state court resolution of the purported state law issues implicated.  The <u>Pullman</u> exception may be applied when "there is (1) an unclear issue of state law presented for decision (2) the resolution of which may moot or present in a different posture the federal constitutional issue such that the state law issue is potentially dispositive." <u>Wise</u>

**Perry et al. v. Marteney et al.**                                    **2:24-CV-18**

<u>Preliminary Injunction Order</u>

v. <u>Circosta</u>, 978 F.3d 93, 101 (4th Cir. 2020) (en banc) (quoting

<u>Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.</u>, 710 F.2d

170, 174 (4th Cir. 1983)).

Defendants argue abstention is appropriate here considering

the 2023 enactment of the Equal Protection for Religion Act

("EPRA") in West Virginia. That statute, found at W. Va. Code §

35-1A-1, largely codifies the traditional strict scrutiny standard

deployed in constitutional question litigation. Specifically, the

EPRA prohibits the state from "substantially burden[ing] a

person's exercise of religion unless applying the burden to that

person's exercise of religion in a particular situation is

essential to further a compelling governmental interest; and is

the least restrictive means of furthering that compelling

governmental interest . . . ." W. Va. Code § 35-1A-1(a)(1). The

EPRA, however, also creates a "claim" for violation of this

standard for "injunctive or declaratory relief and reimbursement

of costs and reasonable attorney fees." W. Va. Code § 35-1A-

1(b)(1).

Plaintiffs, however, assert no EPRA claim here. <u>See</u> <u>generally</u>

Compl., ECF No. 1. In fact, they have repeatedly disclaimed any

such cause of action here. This strikes the Court as significant

as to whether exercising its discretion under <u>Pullman</u> is even an

option. The first step in a <u>Pullman</u> analysis is to determine if

there is "an unclear issue of state law **presented for decision.**"

Wise, 978 F.3d at 101 (emphasis added). The Fourth Circuit has

further noted the ambiguous state law claim must be "in issue" and

"not duplicative" of the asserted claims. Educational Services,

Inc. v. Maryland State Board for Higher Education, 710 F.2d 170,

174 (1983). Simply, neither of these prerequisites are satisfied

here.

Again, Plaintiffs have expressly disavowed an EPRA claim. It

is therefore not "presented" or "in issue" directly. Moreover, it

is difficult to discern what ambiguity exists in the EPRA which

would justify this Court pausing consideration of Plaintiffs'

claims given the presence of jurisdiction. The statute codifies

strict scrutiny and enables a state law challenge to any state

effort to burden religious observance. Nothing about the statute

is unclear as it is, contrary to Educational Services' holding,

duplicative of Plaintiffs' claims before this Court.

Defendants also tepidly point to the mandatory vaccine

statute as a potential basis for triggering Pullman abstention.

Like EPRA, nothing in W. Va. Code § 16-3-4 presents as ambiguous.

The mandatory vaccine statute specifically lists the required

vaccines and declares only those medically exempted are excused

from compliance. Again, nothing in either statute at the forefront

of Plaintiffs' claims is ambiguous such that deference to the West

Virginia state courts is advisable.  "[W]hen a statute is not ambiguous, there is no need to abstain even if state courts have never interpreted the statute."  City of Houston, Tex. v. Hill, 482 U.S. 451, 469 (1987).[14]

Defendants rely heavily upon Judge Bailey's reasoned decision in West Virginia Parents for Religious Freedom v. Christiansen, 685 F. Supp.3d 371 (N.D.W. Va. 2023) where His Honor elected to invoke Pullman abstention.  There, the plaintiffs asserted a constitutional challenge to the same statute, W. Va. Code § 16-3-4, but sought wider relief including mounting a facial challenge, in addition to an as-applied challenge, to the statute.  After the State of West Virginia submitted its amicus curiae brief arguing the EPRA was "directly relevant" to the issues before the Court, Judge Bailey granted the defendant's motion for summary judgment to the extent it urged Pullman abstention was the proper course of action.

Respectfully, this Court has a different interpretation of the issues presented in this specific case. Plaintiffs have undertaken a different tact in this case:  different parties,

---

[14] As noted, the EPRA merely codifies the strict scrutiny standard. As the Court discusses supra, there is little ambiguity about the impact strict scrutiny analysis has on Plaintiffs' as-applied challenge to the mandatory vaccine statute either.  "[S]trict scrutiny, in practice, is virtually impossible to satisfy . . ..". Washington Post v. McManus, 944 F.3d 506, 520 (4th Cir. 2019)

Perry et al. v. Marteney et al.                          2:24-CV-18

Preliminary Injunction Order

different facts (a student only seeking ability to enroll virtually), and a different constitutional challenge (as-applied challenge only). Plaintiffs eschewed any reference to the EPRA and, instead, Defendants ask the Court to impose that statute and potential claim here over Plaintiffs' objection. Also, here, the Court does not have the benefit of the "State's" position in this as-applied challenge as Judge Bailey had – despite notice being afforded. ECF No. 40-1. The EPRA, although not presented here, is duplicative of Plaintiffs' First Amendment challenge.

In summary, the Court does not find the Pullman factors to be satisfied; therefore, it would be inappropriate to abstain where jurisdiction is otherwise established. See Sonda, 92 F.4th at 219-220.

**C. Rule 19 Motion to Dismiss**

Defendants Marteney and Miller also move to dismiss Plaintiffs' Complaint for failure to join an indispensable party arguing the State Board of Education and State Superintendent should have been named as party-defendants. ECF No. 29. Specifically, Defendants argue they are powerless to "consider a religious exemption" to W. Va. Code § 16-3-4 and, in addition, the state takeover renders them largely unable to do much of anything

Case 2:24-cv-00018-TSK    Document 52    Filed 10/15/24    Page 35 of 68  PageID #: 1020
Perry et al. v. Marteney et al.                                    2:24-CV-18
Preliminary Injunction Order

other  than  follow  direction  from  the  State  Board  and  State Superintendent.[15]

"Courts  are  loathe  to  dismiss  cases  based  on  nonjoinder  of  a party,  so  dismissal  will  be  ordered  only  when  the  resulting  defect cannot  be  remedied  and  prejudice  or  inefficiency  will  certainly result."  Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 441 (4th Cir. 1999)  (citation  omitted).    Therefore,  before  dismissing, courts  conduct  an  in-depth,  two-step  inquiry  to  assure  non-joinder is  in  fact  fatal  to  the  claim.    See  National Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of South Carolina, Inc., 210 F.3d 246, 249 (4th Cir. 2000) ("Federal Rule of Civil Procedure 19 sets forth  a  two-step  inquiry  for  a  district  court  to  determine  whether a  party  should  be  joined  in  an  action.").    First,  courts  consider whether  a  party  is  necessary  "because  of  its  relationship  to  the matter  under  consideration."    Owens-Illinois, Inc., 186 F.3d at 440.    Next,  "[i]f  a  party  is  necessary,  it  will  be  ordered  into the  action."    Id.    Only  when  a  party  cannot  be  joined  will  the court  "determine  whether  the  proceeding  can  continue  in  its absence,  or  whether  it  is  indispensable  pursuant  to  Fed. R. Civ. P. 19(b)  and  the  action  must  be  dismissed."    Id.; see also

---

[15] Defendants  Marteney  and  Miller  likewise  argue  Defendant Christiansen  is  indispensable  as  the  "chief  enforcer"  of  W. Va. Code § 16-3-4,  the  singular  statute  made  subject  of  Plaintiffs' as-applied  challenge  here.    The  Court,  for  reasons  set  forth previously,  rejects  this  argument.

**Perry et al. v. Marteney et al.**                                      **2:24-CV-18**

<u>Preliminary Injunction Order</u>

<u>Teamsters Local Union No. 171 v. Keal Driveaway Co.</u>, 173 F.3d 915, 917-18 (4th Cir. 1999).

Federal Rule of Civil Procedure 19(a) identifies persons that are to be joined "if feasible," including a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction, if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties, or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect that interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

In determining whether a party is indispensable, Rule 19 specifies the following factors for the Court to consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> (A) protective provisions in the judgment;
>
> (B) shaping the relief; or
>
> (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b)(1)-(4).

The Upshur County Defendants argue both the West Virginia Department of Education and the West Virginia State Superintendent of Schools are indispensable parties here based on their respective duties imposed under state law.  Plaintiffs contend the named (and remaining) defendants, if enjoined, can afford them complete relief.

**1. No other party is necessary to afford Plaintiffs complete relief.**

The Court agrees with Plaintiffs here.  If the Court enjoins Defendants Marteney and Miller and – even - those acting in concert with them "from enforcing W. Va. Code § 16-3-4 against Plaintiffs, unless the government provides an option for Plaintiffs to request a religious exemption to the Virtual Academy" (ECF No. 1 at ¶ 55), Plaintiffs would obtain complete relief against the existing parties to the suit, and that relief would be sufficient to remedy the constitutional violations alleged.  See Dixon v. Edwards, 290 F.3d 699, 713 (4th Cir. 2002) (holding that a party was not necessary where the "injunction entered by the district court in fact gave [the plaintiff] complete relief.").

Perry et al. v. Marteney et al.                                    2:24-CV-18

## Preliminary Injunction Order

Defendants Marteney and Miller's assertion that complete relief cannot be provided without the State Department of Education and the State Superintendent as parties to the suit is unpersuasive. Defendants claim the State Board and the State Superintendent are tasked generally with "interpreting" and "enforcing" the laws touching on public schools, including the mandatory vaccination law, and that they consequently have an "interest" in this litigation. See ECF No. 30 at 14. Defendants Marteney and Miller then imply they will potentially be subject to "incurring inconsistent obligations" if the Court grants injunctive relief, and the State Department of Education and the State Superintendent then interpret the mandatory vaccination statute contrary to the Court's directives and require them to violate a federal court order.

Other courts have held that inclusion of sufficient officials to effect relief satisfies the Rule 19 requirements of joining necessary parties, even if perhaps other parties have some interest in the matter – rejecting the contentions of Defendants here. See Fitzgerald v. Wildcat, 687 F. Supp. 3d 756, 784-785 (W.D. Va. 2023) (holding that inclusion of sufficient officials in their official capacities to afford relief meets the necessary party requirement); see also Salt River Project Agr. Imp. & Power Dist. v. Lee, 672 F.3d 1176, 1180 (9th Cir. 2012). Again, the Supreme

Court has explained that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985). Thus, they are not "suit[s] against the official personally, for the real party in interest is the entity." Id. at 166.

Here, the County Superintendent is acting under the authority and agent of the State Board due to the takeover of the local district. And her inclusion in her official capacity is sufficient to impute their interests in all events. Moreover, the State Board and State Superintendent are unable to merely replace Superintendent Miller to avoid the requirements of an injunction, because the official capacity suit against her and any injunction entered against her in her official capacity will flow to any successor in office. See Fed. R. Civ. P. 25(d).

In Robertson v. Jackson, 972 F.2d 529 (4th Cir. 1992), the official primarily responsible for enforcement of the challenged action argued that other officials should be made a party. However, the Fourth Circuit found no error in not joining the additional officials to the action because the official before the Court was sufficient to provide the relief ordered. Id. at 535. The court noted "no evidence has been presented to suggest he cannot do so with the authority he enjoys under Virginia law."

Perry et al. v. Marteney et al.                                    2:24-CV-18

Id.  "The potentiality that the Commissioner may, at some future time, be unable to cause a particular local agency to comply with federal requirements does not relieve him of his responsibility under federal law to attempt fully to ensure compliance."  Id.

Later, the Fourth Circuit followed the same path in Staley v. Darlington County Sch. Dist., 84 F.3d 707 (4th Cir. 1996). There the Fourth Circuit found that joinder of the state board, despite their general supervision over local school districts, was not necessary under Rule 19.  The Court reasoned including the local officials who engaged in segregation was sufficient to fashion and award the desegregation injunctive relief orders entered by the court.

The same reasoning applies here.  The Fourth Circuit in Stanley concluded the state board was not necessary because "the [School] District has failed to provide a single example of how the State has impeded the district's compliance with the court's order and federal law since 1970."  Id. at 714.  There, the court ultimately found no error by not forcing the Plaintiffs to include the state board because it was not necessary to afford relief. Id. ("The federal rules, however, do not authorize a defendant to compel an unwilling plaintiff to assert a claim against a second defendant.").

Perry et al. v. Marteney et al.                      2:24-CV-18

Preliminary Injunction Order
_____

    In  terms  of  joinder  of  the  State  Board  of  Education,  the
Fourth  Circuit  in  Jackson  observed  that  "[w]e  do  not  address  the
question  of  whether  we  should  refuse  to  entertain  the  claim  of
necessary  parties,  because  we  do  not  believe  that  either  the  State
Board  or  the  local  agencies  are  parties  that  must  be  joined  to
grant  complete  relief."  Id. at 536.  To that end, "[t]he district
court's  order,  requiring  the  Commissioner  to  bring  about  full
compliance  with  federal  timely  processing  and  program  access
requirements,  cannot  be  considered  either  'partial'  or  'hollow'
relief."  Id. (citing Fed. R. Civ. P. 19(a)(1) advisory committee's
note;  and  3A  J.  Moore,  J.  Lucas  &  G.  Grotheer,  Moore's  Federal
Practice,  P  19.071[1]  (2d  ed.  1991)  (joinder  is  not  necessary
"where,  although  certain  forms  of  relief  are  unavailable  due  to  a
party's  absence,  meaningful  relief  can  still  be  provided")).
"Neither  the  State  Board  nor  the  local  agencies  has  been  shown  to
be  an  impediment  to  the  achievement  of  full  compliance  with  the
federal  regulations."  Id.

    The  analysis  in  Robertson  is  equally  applicable  here.  There
is  no  evidence  that  inclusion  of  the  State  Board  of  Education,  or
of  the  State  Superintendent,  is  necessary  to  effect  remedial
relief.  Enjoining  Defendants  Miller  and  Marteney  is  sufficient  to
effect  K.P.'s  re-enrollment.  Defendants'  arguments  to  the
contrary are unavailing.  See, e.g., Luce v. Lexington Cnty. Health

41

Perry et al. v. Marteney et al.                          2:24-CV-18

Preliminary Injunction Order

Servs. Dist., 3:22-03998-MGL, 2023 WL 8809994, at *6 (D.S.C. September 20, 2023) (determining that state official was not a necessary party and inclusion of local officials in official capacity was sufficient).  The specific claim and relief sought here ultimately informs the Court's decision.  "An 'as applied' challenge contends that a law's application to a particular person under particular circumstances deprives that person of a constitutional right.  Thus, a successful 'as applied' challenge precludes the enforcement of a statute against a plaintiff alone." Marcellus v. Virginia State Bd. of Elections, 168 F. Supp. 3d 865, 872 n.8 (E.D. Va. 2016), aff'd, 849 F.3d 169 (4th Cir. 2017) (citing Fed. Election Comm'n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 481 (2007)).  The remaining Defendants – Ms. Marteney and Mr. Miller – are sufficient to permit the Court to fashion a full and proper remedy if warranted.

> **2. There is no prejudice to the State parties and no inconsistent obligations imposed on Defendants Marteney and Miller.**

Defendants also argue prejudice if the State Board and/or State Superintendent are not present to defend their interests and potential inconsistent obligations if this case proceeds as postured.  The Court disagrees.

First, the nature of the Board and Superintendent's duty under the challenged statute is minimal.  The enforcement mechanism of

W. Va. Code § 16-3-4 lies with the local school system.  <u>See</u> W. Va. Code § 16-3-4(c) ("No child or person may be admitted or received in any of the schools of the state . . . ").  Other than generalized supervision responsibility, <u>see</u> W. Va. Code § 18-2-5, the State Board and Superintendent have no direct connection to the mandatory vaccination statute.  The state takeover of Upshur County schools makes no significant difference here.  The duly appointed County Superintendent and Virtual Learning Coordinator are charged with county-level administration.  Therefore, outside of an interest in enforcing the law generally, those entities have no real interest to defend here.

Defendants Marteney and Miller are also not, realistically, exposed to "incurring inconsistent obligations" under Rule 19(a)(1)(B)(ii) if the Court grants injunctive relief.  There is no legitimate scenario where any entity, including the State Board or State Superintendent, would direct the remaining Defendants to ignore or act in contravention of an order from this Court.  Judge Chambers of the Southern District of West Virginia dismissed a similar argument in <u>Nelson v. Warner</u>, 446 F. Supp. 3d 119, 126 (S.D.W. Va. 2020) - albeit in a facial challenge.  Regardless, this Court is satisfied it has jurisdiction over the remaining Defendants and Plaintiffs' claims thereby ensuring compliance with any ultimate resolution and judgment.  Moreover, because this is

an as-applied challenge, injunctive relief would only extend to Defendants Marteney and Miller with respect to K.P. and her enrollment in the Upshur County Virtual School.

"Dismissal of a case is a drastic remedy, however, which should be employed only sparingly." Teamsters Local Union No. 171, 173 F.3d at 918. In determining whether to dismiss a complaint, a court must proceed pragmatically, "examin[ing] the facts of the particular controversy to determine the potential for prejudice to all parties, including those not before it." Id. Having done so, the Court concludes no necessary parties, and certainly no indispensable parties, are absent. Defendants' motion on this ground is therefore **DENIED**.

### D. Preliminary Injunction Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir. 2011) (quoting Winter v. Nat. Res. Def. Counsel, Inc., 555 U.S. 7 (2008)); see Peterson v. Nat'l Telecomms. & Info. Admin., 505 F. Supp.2d 313, 317 (E.D. Va. 2006) (quoting Direx Israel Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1992)) (recognizing that "[a] preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching

power, which is to be applied only in the limited circumstances which clearly demand it").

In order to justify the extraordinary remedy that a preliminary injunction provides, the movant has the burden of demonstrating the following: (1) "that he is likely to succeed on the merits"; (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and (4) "that an injunction is in the public interest." Dewhurst, 649 F.3d at 290 (internal quotation marks and citations omitted); see Direx Israel, 952 F.2d at 812 (indicating that the moving party bears the burden of demonstrating the propriety of a preliminary injunction).  In Dewhurst, the United States Court of Appeals for the Fourth Circuit emphasized the fact that controlling precedent from the Supreme Court mandates that a plaintiff "clearly show" that he is likely to succeed on the merits. Dewhurst, 649 F.3d at 290 (quoting Winter, 555 U.S. at 22) (emphasis added).

The demanding standard outlined in Dewhurst becomes even more exacting when, as here, a plaintiff seeks a preliminary injunction that mandates action, as opposed to the typical form of preliminary injunctive relief seeking to preserve the status quo pending trial. See East Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808, 828 (4th Cir. 2004) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir.

1980)) (noting that "mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demands such relief"). Preliminary injunctions are ordinarily intended to "protect the status quo and to prevent irreparable harm during the pendency of the lawsuit or alternately to preserve the court's ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). In Microsoft, the Fourth Circuit elaborated that such "[m]andatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." Id. (citation omitted). The court further noted that the "application of th[e] exacting standard of review [for preliminary injunctions] is even more searching" when the movant requests relief that "is mandatory rather than prohibitory in nature." Id.

With this framework in mind, the Court turns to the substance of Plaintiffs' claims against Defendants.

**E. The Free Exercise Clause**

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The "Free Exercise" component of the First Amendment applies to states through the

Perry et al. v. Marteney et al.                         2:24-CV-18

Preliminary Injunction Order

Fourteenth Amendment, rendering "the legislatures of the states as incompetent as Congress to enact such laws." Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).

The Supreme Court has held that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." Fulton v. City of Philadelphia, 593 U.S. 522 (2021) (quotation omitted). In considering whether a plaintiff's rights under the Free Exercise Clause are infringed, a court must determine whether the plaintiff's religious exercise has been burdened and whether the burden the government has imposed is constitutionally permissible. Id. A plaintiff bears the burden of showing an infringement of his or her rights under the Free Exercise Clause, and if he or she does so, "the focus then shifts to the defendant to show that its actions were nonetheless justified and tailored consistent with the demands of [Supreme Court] case law." Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 142 S. Ct. 2407, 2421 (2022).

To establish a Free Exercise violation, a plaintiff may show that "a government entity has burdened his [or her] sincere religious practice pursuant to a policy that is not neutral or generally applicable." Id. at 2422 (quotation omitted). As with many constitutional challenges, the key issue here is the level of scrutiny the Court must apply. When a religiously neutral and

Perry et al. v. Marteney et al.                                    2:24-CV-18

Preliminary Injunction Order

generally applicable law incidentally burdens Free Exercise rights, courts will sustain the law against constitutional challenge if it is rationally related to a legitimate governmental interest. See Fulton v. City of Philadelphia, 593 U.S. 522, 533 (2021) (citing Employment Division v. Smith, 494 U.S. 872, 878-82 (1990)). When a law is not neutral or generally applicable, however, the statute may survive only if it is narrowly tailored to achieve a compelling governmental interest. Id. at 1881 (citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546 (1993)).

In determining whether a law is neutral or generally applicable, "[a] law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." Fulton, 593 U.S. at 533 (quotation omitted). Under that rule, if a state reserves the authority to "grant exemptions based on the circumstances underlying each application," it must provide a compelling reason to exclude "religious hardship" from its scheme. Id. (quoting Smith, 494 U.S. at 884). A law also fails to be generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." Id.

Perry et al. v. Marteney et al.                                    2:24-CV-18

Preliminary Injunction Order

A policy is not neutral if it is "specifically directed at religious practice," meaning that it either "discriminates on its face" or "religious exercise is otherwise its object." Kennedy, 597 U.S. at 526 (quotations omitted). "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." Fulton, 593 U.S. at 533 (citing Masterpiece Cakeshop, Ltd. V. Colo. Civ. Rights Comm'n, 584 U.S. 617, 138 S. Ct. 1719, 1730-32 (2018)). "Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny." Kennedy, 597 U.S. at 526.

## 1. West Virginia's Mandatory Vaccine Program is not generally applicable.

Plaintiffs contend the West Virginia mandatory vaccination statute institutes a discretionary exemption to the compulsory vaccination schedule that permits families with medical objections to seek medical exemptions but prohibits families with religious objections from seeking an exemption for religious reasons.

Defendants argued the contrary of course. They do concede general applicability may be absent when a law provides "a mechanism for individualized exemptions," because it creates the risk that administrators will use their discretion to effectively create exemptions on a case-by-case basis, exempting individuals from complying with the law for secular reasons, but not religious reasons. Smith, 494 U.S. at 884 (citations omitted). Defendants

note, in <u>Smith</u>, the Court considered an exemption that was granted for "good cause" as an example of such "individualized exception." 494 U.S. at 884. Similarly, they argue, in <u>Fulton</u>, a city official was able to create exemptions in his or her "sole discretion," which was violative of the general applicability framework. <u>Fulton</u>, 593 U.S. at 523.

Defendants rely heavily on the First Circuit's decision in <u>Does 1-6 v. Mills</u>, 16 F.4th 20 (1st Cir. 2021), in urging the Court to find W. Va. Code § 16-3-4 generally applicable. In <u>Does 1-6</u>, the First Circuit assessed a challenge to Maine's state regulation mandating healthcare workers receive a COVID-19 vaccination. <u>See</u> <u>id</u>. at 24. Among the many issues raised, the court had to determine which level of scrutiny applied to the healthcare workers' constitutional claims and specifically if the state regulations were generally applicable under <u>Smith</u>. <u>See</u> <u>id</u>. at 29-30. The court ultimately concluded the regulatory scheme was generally applicable subjecting the Maine vaccination rule to something less stringent than strict scrutiny. "The emergency rule does not require the state government to exercise discretion in evaluating individual requests for exemptions." <u>Id</u>. at 30.

That conclusion stands to reason because no state official approval or review of the exemption is required under Maine's compulsory vaccination rules. No "request" is actually made.

Perry et al. v. Marteney et al.                          2:24-CV-18

Instead, a "medical exemption is available to an employee who provides a written statement from a licensed physician, nurse practitioner or physician assistant that, in the physician's, nurse practitioner's or physician assistant's professional judgment, immunization against one or more diseases may be medically inadvisable." Me. Rev. Stat. Ann. tit. 22, § 802. Nor is there any administrative appeal to a Maine state, county, or local government agency for an adverse decision or the like. An employer is only required to keep the physician's certification "in the permanent health record for that employee for a minimum of six years after termination." Code Me. R. tit. 10-144 Ch. 264, § 3. Maine's statutory and regulatory scheme is sufficiently different from West Virginia's mandatory vaccination statute to make Does 1-6 readily distinguishable on the generally applicable issue.[16]

Although W. Va. Code 16-3-4 does not tend toward the unbridled discretion found in Fulton ("sole discretion") or Smith ("good cause"), the Court finds the medical exemption provided in West Virginia law, as applied to K.P., to be sufficiently discretionary

---

[16] The Court likewise finds Defendants' other points of authority - Miller v. McDonald, No. 1:23-CV-00484 EAW, 2024 WL 1040777 (W.D.N.Y. Mar. 11, 2024) and Royce v. Bonta, No. 3:23-CV-02012-H-BLM, 2024 WL 1269485 (S.D. Cal. Mar. 25, 2024) - on this question unavailing as well. The Court finds the other cited authority that predates Fulton unpersuasive. See, e.g., ECF No. 21 at p.12.

### Preliminary Injunction Order

to fall outside the "generally applicable" field.  The statute provides the health commissioner "is authorized to grant . . . exemptions to the compulsory immunization requirements . . . on a statewide basis, upon sufficient medical evidence that immunization is contraindicated or there exists a specific precaution to a particular vaccine."  W. Va. Code § 16-3-4(h). The statute is silent as to an exemption for any family who may have religious objections. As alleged in the Complaint, Defendants communicated the same to Plaintiffs when they requested a religious exemption for K.P.

At the first level of the medical exemption process, a physician must complete a form, the Request for Medical Exemption from Compulsory Immunization Form,[17] requesting an exemption and justifying the request.  If and when the medical exemption form is signed by a physician, it is then forwarded to the State's Immunization Officer for personalized review. See ECF No. 1-2, Dr. Alvin Moss Declaration, ¶¶ 5-12.  According to the West Virginia Office of Epidemiology and Prevention Services, the Immunization Officer will review the evidence obtained from the child's

---

[17]    The form can be located at https://oeps.wv.gov/immunizations/Documents/Childcare,%20School%20and%20College%20Requirements/WV%20Medical%20Exemption%20Request%20Form-05-03-2024.pdf (last visited October 15, 2024).  It provides several lines for the physician to discuss medical diagnoses and any "further information you feel is relevant to this request."

Perry et al. v. Marteney et al.                                    2:24-CV-18

Preliminary Injunction Order

physician. If the evidence or information is incomplete, the Immunization Officer will make a request for additional evidence. If all the evidence received by the Immunization Officer, including **all medical opinion(s),** is consistent and there is sufficient evidence to determine whether to grant an exemption, the Immunization Officer will make a determination or decision based on that evidence. If the exemption is approved, that student is permitted to attend school without having received the mandated vaccines. If the Immunization Officer denies the medical exemption, the decision can be appealed to the State Health Officer, who reviews the appeal on a case-by-case basis and determines whether to uphold or reverse the State Immunization Officer's decision. See W. Va. Code § 16-3-4(h)(4).

In practice, based on the record currently before the Court, there is significant individualized discretion in this process. First, the Exemption Request form requires diagnosis information and "any other relevant information" from a practicing physician. The Immunization Officer then considers evidence including "medical opinions" in determining whether to approve the request. Plaintiffs also provide testimony from Dr. Alvin Moss, a West Virginia physician, who has evaluated schoolchildren and determined in his discretion whether their health conditions qualify them for a medical exemption under West Virginia Code §

Perry et al. v. Marteney et al.                              2:24-CV-18

16-3-4(h).   See ECF No. 1-2, ¶¶ 12-17.   Dr. Moss further details the inherent case-by-case discretion associated with evaluating these requests.   Id. at ¶¶ 8-12.   The criteria by which medical exemptions are evaluated are not objective and are subject to the opinion of each government official who evaluates the exemption request and differing outcomes can and are reached depending on the evaluator of the request.   Id. Moreover, the implementing regulations for the medical exemption provide for consideration of "evidence from medical sources, such as medical history, **opinions**, and statements about treatment the child has received."   W. Va. C.S.R. § 64-95-17.2.a.2 (emphasis added).

As Dr. Moss's Declaration makes clear, the practice of medicine including in the area of contraindication for vaccines involves discretion and judgment.   Reasonable minds, of course, may differ.   The process set forth in W. Va. Code § 16-3-4 involves multiple layers of medical judgment and review.   Initially, a practicing physician offers his or her opinions.   Then, the government becomes involved reviewing and passing judgment on the treating physician's recommendation.   This review requires discretion and judgment to be exercised – not the simple task of checking objective boxes.   Ultimately, the Court concludes this process is sufficiently similar to the standards at issue in Fulton

and Smith to consider W. Va. Code § 16-3-4 short of general applicability.

The Court therefore concludes W. Va. Code 16-3-4 is not a generally applicable statute under Fulton.[18] Thus, Plaintiffs' as-applied challenge triggers strict scrutiny.

### 2. Defendants fail to satisfy strict scrutiny.

Where strict scrutiny applies, government policy survives "only if it advances interests of the highest order and is narrowly tailored to achieve those interests," meaning that "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." Fulton, 593 U.S. at 541 (quotation omitted). When considering the governmental interests at issue, a court must not rely on "broadly formulated interests"; instead, it "must scrutinize the asserted harm of granting specific exemptions to particular religious claimants." Id. (quotation omitted). The relevant question is not whether the government has a compelling interest in enforcing its policies generally, but instead whether the government has such an interest in denying a religious exemption to a particular plaintiff. Id.

The parties debate the impact of the Fourth Circuit's decision in Workman here. That case, decided over 13 years ago, addressed

---

[18] The Court need not – and for purposes of resolving the pending motions, does not – reach the question of whether W. Va. Code § 16-3-4 is neutral.

the same statute challenged here, W. Va. Code 16-3-4.  Workman,
419 Fed. Appx. 348 (4th Cir. 2011).[19]  Ultimately, the Fourth Circuit
affirmed Judge Goodwin's summary judgment finding for the
defendants noting the mandatory vaccination statute served a
compelling state interest.  Id. at 353.  "[T]he state's wish to
prevent the spread of communicable diseases clearly constitutes a
compelling interest."  Id.: see also Does 1-6 v. Mills, 16 F.4th
20, 32 (1st Cir. 2021) ("Few interests are more compelling than
protecting public health against a deadly virus.").[20]

Notably, however, the Workman court did not address whether
the statue was sufficiently narrow in its tailoring.[21]  The court

---

[19] Plaintiffs make much of Workman being an unpublished decision.
Although "unpublished opinions are not binding precedent in this
circuit," Rule 32.1 permits citation to the decision which occurred
after January 1, 2007.  Even if unpublished, this Court affords
serious and significant consideration to any pronouncement of the
Fourth Circuit and has done so here.  Considering the recent
developments in the law and for all the reasons articulated herein,
the Court reaches a different conclusion.

[20] Plaintiffs argue the efficacy and purpose of some of the mandated
vaccines should inform the Court's decision here.  The Court finds
it unnecessary to delve into those matters to resolve the pending
motions.  Moreover, the Court does not believe it proper to
adjudicate such important questions without the benefit of a fully
developed factual record.

[21] Defendants also point the Court to the Supreme Court of Appeals
of West Virginia's decision in D.J. v. Mercer County Board of
Education, No. 13-0237, 2013 WL 6152363 (W. Va. November 22, 2013).
There, the court considered a challenge to the State's vaccination
requirements under the West Virginia Constitution's equal
protection and due process clauses.  It does not appear a Free
Exercise challenge was mounted.  Although not binding here, the
Court always gives careful consideration to the State's highest

relied on the oft-cited combination of Jacobson v. Massachusetts, 197 U.S. 11 (1905) and Prince v. Massachusetts, 321 U.S. 158 (1944).   The Jacobson decision was certainly prevalent in the litigation surrounding various COVID-era executive orders and the like. There, the Supreme Court found compulsory vaccination against smallpox a valid exercise of the state's police power without infringing any federal constitutional rights.   See Workman, 419 Fed. Appx. at 353.  Of course, since Workman and the even further removed time of Jacobson, the Supreme Court has wrestled with Free Exercise Clause challenges to the exercise of that "police power" during the COVID pandemic.  This Court now has the benefit of that analysis and guidance in assessing Plaintiffs' claims here.

    As discussed above, if strict scrutiny applies, Defendants must satisfy the stringent strict scrutiny standard – and both prongs of it.  "[H]istorically, strict scrutiny requires the State to further 'interests of the highest order' by means 'narrowly tailored in pursuit of those interests.'"  Tandon v. Newsom, 593 U.S. 61, 64-65 (2021) (quoting Church of Lukumi Babaly Aye, Inc.,

---

court's analysis particularly on matters of State law such as those presented here.  However, the Supreme Court of Appeals did not consider the "narrowly tailored" prong of the strict scrutiny analysis despite acknowledging its application and the compelling interest of protecting the health and safety of the public.  Id. at *4.  The Court, therefore, finds little guidance in that decision when resolving Plaintiffs' claims here.

Case 2:24-cv-00018-TSK    Document 52    Filed 10/15/24    Page 58 of 68  PageID #: 1043
Perry et al. v. Marteney et al.                                    2:24-CV-18
Preliminary Injunction Order

508 U.S. at 546). "That standard is not watered down; it really means what it says." Id. (internal quotations and citations omitted). At this stage of these proceedings, considering Workman and the other authority Defendants cite, the Court finds Defendants have carried their burden to show a compelling state interest in preventing the spread of infectious disease. See, e.g., D.J. v. Mercer County Board of Education, 2013 WL 6152363, at *4 ("[T]he protection of the health and safety of the public is one of the most important roles of the state."); Does 1-6, 16 F.4th at 32 ("Few interests are more compelling than protecting public health against a deadly virus.").

However, the Court finds Defendants have failed to demonstrate W. Va. Code § 16-3-4 is narrowly tailored to achieve the identified compelling state interest. As an initial matter, and as Plaintiffs note, 45 other states have religious or philosophical exemption options to their vaccine mandates. Thus, it is readily apparent the approach West Virginia has taken is broader than other states, rendering any suggestion W. Va. Code § 16-3-4 is narrowly tailored to advance the identified compelling interest of stemming infectious disease spread unpersuasive.[22]

_____

[22] As discussed supra, Governor Justice's veto message touted the broad sweep of West Virginia's vaccination requirements and its relative success rate in advancing the state's compelling interest in curbing the spread of contagious disease.

Preliminary Injunction Order

In addition, West Virginia has also provided carve outs for other students removed from physical school structures from the mandatory vaccination statute. Specifically, children are exempted from compulsory school attendance requirements, and are excluded from "any other provision of law relating to education," if they participate in learning pods or microschools. W. Va. Code § 18-8-1(n)(8). Under West Virginia law, a "learning pod" means "a voluntary association of parents choosing to group their children together to participate in their elementary or secondary academic studies as an alternative to enrolling in a public school, private school, homeschool, or microschool, including participation in an activity or service provided to the children in exchange for payment." W. Va. Code § 18-8-1(n)(1)(A). A "microschool" "means a school initiated by one or more teachers or an entity created to operate a school that charges tuition for the students who enroll and is an alternative to enrolling in a public school, private school, homeschool, or learning pod." W. Va. Code § 18-8-1(n)(1)(B).

Unlike students enrolled in virtual school such as K.P., West Virginia pupils advancing their education in either an otherwise permissible learning pod or microschool are excluded from the requirements of W. Va. Code § 16-3-4. There is no statutory requirement that either learning pods or microschools adhere to or

teach any religious curriculum or belief system. These students, like virtual students, rarely, if ever, physically attend class or school.  It therefore strains reason to find W. Va. Code § 16-3-4 is sufficiently tailored to advance the State's interest within constitutional confines when similarly situated secular students are excused from the statute's reach.  "The principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause."  Church of Lukumi Babaly Aye, Inc., 508 U.S. at 543.

In determining there exists a narrower path to advance the State's compelling interest, the Court also considers recent legislative activity demonstrating the possibility.  During the 2024 Regular Legislative Session, the West Virginia Legislature passed House Bill 5105 which sought to amend the challenged statute here, W. Va. Code § 16-3-4, by, inter alia, creating an exemption to the mandatory vaccine requirement for full-time virtual public school students.  Governor Justice vetoed this legislation citing feedback primarily from the medical community and West Virginia's

success in combating the spread of the diseases listed in W. Va. Code § 16-3-4(b) – the compelling interest here.[23]

However, House Bill 5105 bolsters Plaintiffs' argument that a more narrowly tailored approach is possible to advance that interest which, to withstand strict scrutiny, the Constitution requires. "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." United States v. Playboy Ent. Grp., Inc., 529 U.S. 803, 813 (2000) (citation omitted) (assessing Free Speech claim under the First Amendment). Many other states have deployed a less restrictive measure to advance the identified compelling interest. The West Virginia Legislature has indicated it is possible as well. At

---

[23] Respectfully, the political machinations of the legislative process assist the Court only in assessing if a more narrowly tailored approach is available. The merits of the arguments over House Bill 5105 are better left to other branches of government. Legislative enactments, of course, must remain within the Constitution's framework. As the Supreme Court summarized,

> The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.

W. Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 638 (1943).

this point, Defendants have failed to sustain their burden on this issue.

Having found W. Va. Code § 16-3-4 is subject to strict scrutiny in deciding Plaintiffs' Free Exercise challenge, the Court finds Plaintiffs are likely to succeed on the merits in that the mandatory vaccine statute is not sufficiently narrowly tailored to satisfy Constitutional safeguards. The Court, therefore, must assess the remaining Winter factors.

### 3. Plaintiffs will suffer Irreparable Harm.

Plaintiffs must also demonstrate irreparable harm for injunctive relief to issue. See Hyman v. City of Salem, 396 F. Supp.2d 666, 670 (N.D.W. Va. 2019) (citation omitted). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). The Supreme Court has been clear and has reiterated in recent years that a plaintiff may be "irreparably harmed by the loss of free exercise rights 'for even minimal periods of time.'" Tandon, 593 U.S. at 64 (quoting Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 19 (2020)). The Fourth Circuit has echoed the same. "[T]he denial of a constitutional right . . . constitutes irreparable harm for purposes of equitable jurisdiction." Ross v. Meese, 818 F.2d 1132, 1135 (4th Cir. 1987);

see also Recht v. Justice, No. 5:20-CV-90, 2020 WL 6109430, at *7 (N.D.W. Va. June 26, 2020) (Bailey, J.).

Based on the record before it, the Court finds Plaintiffs are likely to suffer irreparable harm.  Plaintiffs' Free Exercise rights vis-à-vis their legal obligation to educate K.P. have been burdened.  K.P. has been denied her parents' preferred method of constitutionally-required education.   As alleged in their Complaint, and there is no present dispute, Plaintiffs have and will continue to face obstacles in homeschooling K.P. as Mrs. Perry works full-time to provide for her family and Mr. Perry suffers from physical disabilities.  Of course, Plaintiffs face criminal prosecution and sanctions if they fail to educate their daughter. See W. Va. Code § 18-8-2.  These hardships are imposed solely because Plaintiffs refused to sacrifice their religious beliefs. K.P. was enrolled and excelling in the Upshur County Virtual School program prior to Defendants' refusal to afford her a religious exemption from West Virginia's mandatory vaccine statute in response to the December 2023 email blast from the State Superintendent.[24]   Plaintiffs have satisfied their burden to demonstrate irreparable harm at this stage.

---

[24] The record presently before the Court does not reveal any particular prompt for the State Superintendent's email about virtual students and their vaccination status.  That missive was the impetus for K.P. being disenrolled and this Free Exercise challenge being filed.

Perry et al. v. Marteney et al.                                    2:24-CV-18

Preliminary Injunction Order

### 4. Balance of Equities and Public Interest

With respect to the third and fourth <u>Winter</u> factors, the Court turns to Judge Bailey's analysis and summary in <u>Recht</u>.

> [T]he third and fourth <u>Winter</u> factors (the balance of equities and the public interest) are established when there is a likely First Amendment violation. <u>Id</u>. at 191. "[A] state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." <u>Giovani Carandola, Ltd. v. Bason</u>, 303 F.3d 507, 521 (4th Cir. 2002) (internal quotation marks omitted). It also teaches that "upholding constitutional rights surely serves the public interest." <u>Id</u>

<u>Recht</u>, 2020 WL 6109430, at *7. The Court, having found Plaintiffs are likely to succeed on their First Amendment claim, also concludes the remaining <u>Winter</u> factors counsel in favor of issuing the requested injunctive relief.

### IV.    CONCLUSION

As the Supreme Court has long observed, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." <u>Fulton</u>, 593 U.S. at 533 (quoting <u>Thomas v. Review Bd. Of Ind. Employment Security Div.</u>, 450 U.S. 707, 714 (1981)). "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force

**Preliminary Injunction Order**

citizens to confess by word or act their faith therein." Barnette, 319 U.S. at 642.  The wisdom of Plaintiffs' choices about vaccines is rightfully not before this Court. Vindication of their First Amendment rights is, however.  Their burden to secure proactive injunctive relief is not a light one.  Defendants' burden in surviving strict scrutiny is a heavier one.

### A.    Scope of Injunction

Here, Plaintiffs have satisfied their burden while Defendants have failed in theirs; thus, the Court grants the injunctive relief sought in the Complaint.  To be clear, Plaintiffs assert **only** an as-applied challenge with respect to W. Va. Code § 16-3-4 and specifically as to how Defendants have applied that statute to K.P. in refusing to enroll her in the Upshur County Virtual School program.  The preliminary injunction issued here is **only** designed to prevent Defendants from continuing to violate Plaintiffs' First Amendment rights and to permit K.P.'s enrollment in that virtual schooling program if she seeks a valid religious exemption from Defendants.  This Court makes no finding on the facial constitutionality of W. Va. Code § 16-3-4; nor does the Court's order apply to any other students in any other educational program elsewhere in the State of West Virginia.

Therefore, pursuant to Fed. R. Civ. P. 65(d), Defendants and their officers, agents, servants, and employees, and anyone acting

in active concert or participation with them (collectively hereinafter, "the Enjoined Parties"), are hereby **PRELIMINARILY ENJOINED** as follows:

> **Effective October 15, 2024, the Enjoined Parties shall be enjoined from enforcing W. Va. Code § 16-3-4 against Plaintiffs, unless Defendants provide an option for requesting a religious exemption that is meaningfully processed. K.P. shall not be prevented from enrolling in the Upshur County Virtual School due to her unvaccinated status.**

This injunction shall remain in place as stated herein pending further Order of this Court.

## B.    Rule 65(c) Security

Rule 65(c) states that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "This rule is mandatory and unambiguous." Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 421 (4th Cir. 1999). Failure to require a bond upon issuing injunctive relief is considered reversible error. See District 17, UMWA v. A&M Trucking, Inc., 991 F.2d 108, 110 (4th Cir. 1993). Here, no party has requested any specific bond be required or set. The record does not reveal significant risk of grave potential harm to either Defendant if this injunction ultimately proves

improvidently granted.  In such circumstances, the Fourth Circuit

has instructed:

> In fixing the amount of an injunction bond,
> the district court should be guided by the
> purpose underlying Rule 65(c), which is to
> provide a mechanism for reimbursing an
> enjoined party for harm it suffers as a result
> of an improvidently issued injunction or
> restraining order. The amount of the bond,
> then, ordinarily depends on the gravity of the
> potential harm to the enjoined party:
>
>> [T]he judge usually will fix
>> security in an amount that covers
>> the potential incidental and
>> consequential costs as well as
>> either the losses the unjustly
>> enjoined or restrained party will
>> suffer during the period he is
>> prohibited from engaging in certain
>> activities or the complainant's
>> unjust enrichment caused by his
>> adversary being improperly enjoined
>> or restrained.
>
> 11A Charles Alan Wright et al., Federal
> Practice & Procedure § 2954, at 292 (2d
> ed.1995). Where the district court determines
> that the risk of harm is remote, or that the
> circumstances otherwise warrant it, the court
> may fix the amount of the bond accordingly.
> In some circumstances, a nominal bond may
> suffice.  See, e.g., International Controls
> Corp. v. Vesco, 490 F.2d 1334 (2d Cir.1974)
> (approving district court's fixing bond amount
> at zero in the absence of evidence regarding
> likelihood of harm).

Hoechst Diafoil Co., 174 F.3d at 421 n.3.

Considering the totality of the record and circumstances

before the Court, the Rule 65(c) bond is fixed at zero dollars.

Perry et al. v. Marteney et al.                                2:24-CV-18

Preliminary Injunction Order

See, e.g., Bernstein v. Sims, 643 F. Supp.3d 578, 589 (E.D.N.C. 2022) ("In light of the important federal rights at issue in this case, and absent any request from defendants for plaintiff to provide security, the Court determines a zero dollar bond is appropriate in this instance.").

In summary, for the reasons set forth herein, the pending motions are decided as follows:

1. Plaintiffs' Motion for Preliminary Injunction [ECF No. 7] is **GRANTED**;

2. Defendant Christiansen's Motion to Stay [ECF No. 22] is **DENIED**; and

3. Defendants Marteney and Miller's Motion to Dismiss [ECF No. 29] is **DENIED**.

Furthermore, Dr. Mathew Christiansen is hereby **DISMISSED** as a Defendant in this action.

It is so **ORDERED**.

The Clerk is hereby directed to forward a copy of this Order to all counsel or record.

The Clerk is **DIRECTED** to transmit copies of this Order to counsel of record.

**DATED:**  October 15, 2024

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA